UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WALTER MILLER                                              PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:04CV0405LN

GEORGIA GULF CORPORATION AND
GEORGIA GULF CHEMICALS & VINYLS, LLC                       DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on motion of defendants
Georgia Gulf Corporation and Georgia Gulf Chemical & Vinyls, LLC
for summary judgment as to the claims of plaintiff Walter Miller
pursuant to Federal Rule of Civil Procedure 56.  Plaintiff has
responded in opposition.  Having considered the memoranda and
attachments of the parties, the court concludes that defendants'
motion should be granted.

On August 20, 2004, plaintiffs Miller, Carter, Bradley,
Holloway and Walker filed suit against their employer, Georgia
Gulf Chemicals & Vinyls, LLC and its parent corporation, Georgia
Gulf Corporation, alleging that defendants discriminated against
them based on their race, black, in violation of Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C.
§ 1981.  In their complaint, plaintiffs collectively allege that
defendants engaged in widespread intentional race discrimination
through preferential treatment of white employees in all aspects
of employment, including discrimination in evaluation,
compensation, promotion, hiring, transfer, training and
termination.  On February 10, 2005, this court dismissed

plaintiffs' Title VII and § 1981 class claims of discriminatory evaluation, compensation, termination, training, transfer and hiring, leaving only plaintiffs' Title VII and § 1981 class claim for discriminatory failure to promote.  Since entry of the court's order, all claims except the claim of plaintiff Miller for discriminatory failure to promote have been voluntarily dismissed.

Miller's allegation, and the facts relevant to his claim, as gleaned from the complaint and record evidence, are briefly summarized.  In July 1980, plaintiff began work at the Gallman facility owned by defendants.  This facility manufactures vinyl compounds, utilizing four production lines, on rotating twelve-hour shifts, seven days per week.[1]  During the relevant time period, these production lines were manned by class A operators and class B operators.  These operators were supervised by the production foreman, and the foreman reported to the production supervisors, who in turn reported to the plant manager.  In addition, two class A operators per shift were named substitute or "detail" foreman, and these individuals were responsible for assuming the duties of the production foreman when he was out.

In 1984, Miller advanced to a class A operator position and was assigned to the kneader position on lines 1 and 2.  During the late 1980's or early 1990's, Miller also served as the detail foreman on his shift for approximately two years.  After two

---

[1]  When Miller began employment the Gallman facility operated two production lines, "lines 1 and 2," but in 1997, the facility opened two additional lines, "lines 3 and 4."

years, he was transferred to another shift, which already had two detail foremen in place.  In April 2002, plaintiff applied for the subject production foreman position.  He was interviewed for the position, but he did not receive the promotion.  Believing he did not receive the promotion on account of his race, Miller filed a charge of discrimination with the Equal Employment Opportunity Commission, and upon receipt of his right-to-sue letter, filed the instant suit alleging unlawful employment discrimination.

Defendants are now seeking summary judgment on Miller's claim for discriminatory failure to promote, arguing that he cannot establish a prima facie case of racial discrimination, and even if he could, he cannot rebut the legitimate, non-discriminatory reason defendants have given for their decision.  That is, defendants contend that Kelvin Elkins, the white male who was selected for the production foreman position, was the most qualified candidate for the position.

To establish a prima facie case of discrimination in a failure to promote case such as this, Miller must demonstrate that: (1) he is a member of the protected class; (2) he sought and was qualified for the position; (3) he was rejected for the position; and (4) the employer continued to seek or promoted applicants with his qualifications.  See Davis v. Dallas Area Rapid Transit, 383 F. 3d 309 (5th Cir. 2004); Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 354-55 (5th Cir. 2001). In response, defendants are provided an opportunity to present

their legitimate, non-discriminatory reasons for the decision to promote Elkins, and then the burden is on Miller to show that the proffered reasons are pretextual.  As stated by the Fifth Circuit, "[i]n order to show that a proffered reason was merely a pretext, and defeat a summary judgment dismissal of a non-promotion discrimination case, this Court requires that a plaintiff show a difference in his qualifications superior to that of the person selected 'so apparent as to virtually jump off the page and slap us in the face.'"  Edwards v. Principi, 80 Fed. Appx. 950, 952, 2003 WL 22709001, *2 (5th Cir. 2003)(quoting EEOC v. Louisiana Office of Community Servs., 47 F.3d 1438, 1445 (5th Cir. 1995)).

It is undisputed that Miller is black, he applied for the production foreman position, he was not selected for the position, and Elkins, a white male, was promoted.  However, defendants take the position that Miller was not qualified for the job of production foreman.  Assuming for the sake of argument that plaintiff is minimally qualified for the production foreman position, the court, having reviewed the evidentiary submissions of the parties, is of the opinion that he nevertheless cannot succeed on his claim because he cannot show that he was "clearly better qualified" than Elkins.  See Deines v. Texas Dept. of Protective and Regulatory Services, 164 F.3d 277, 280 (5th Cir. 1999).

In support of their motion for summary judgment, defendants have submitted the affidavit of Steve Hillman, who served as plant

4

manager of the Gallman facility between 2001 and 2004.[2]   He
interviewed the four candidates for the production foreman
position, reviewed each candidate's personnel file, conferred with
the production supervisors and the production foreman regarding
each candidate's work history and qualifications, and ultimately
selected Elkins.   According to Hillman, the production foreman is
responsible for managing the four production lines during his
twelve-hour shift, which includes supervising a crew of fourteen
operators, maximizing production of product, ensuring that
employees follow established safety procedures, promptly resolving
equipment problems, and dealing with any disciplinary issues that
may arise.   Hillman submits Elkins was the most qualified
applicant for the position.

     At the time he was promoted, Elkins was a class A operator
with fifteen years' experience at the Gallman facility.   Hillman,
in his affidavit, detailed the reasons for his decision to promote
Elkins.   He explained that in the four years prior to the opening
up of the production foreman position, Elkins had successfully
served as the detail foreman on his shift, and in that capacity,
had assumed the production foreman duties over all four production
lines on numerous occasions.   Because Elkins had worked as the
detail foreman on the resigning production foreman's shift, he
also served as the interim production foreman, while candidates

---

[2]   Hillman currently serves as the manager of quality process
and improvements for Georgia Gulf Chemicals and Vinyls' Compounds
Division.

for a permanent replacement were being considered.  According to Hillman, Elkins' performance during this time period was "exemplary."  Finally, Hillman stated that Elkins was unanimously recommended by the production supervisors and the production foremen as the most qualified candidate, as compared to all of the other applicants.[3]

With respect to Miller's qualifications and work history, Hillman states that Miller's experience was primarily limited to his position as a kneader operator on lines 1 and 2 and he had no experience working in any of the class A operator positions on lines 3 and 4.  While Miller had served as a detail foreman for two years in the early 1990's, this experience was prior to the opening of lines 3 and 4, and thus, his experience was limited to supervision of lines 1 and 2.  Furthermore, Steve Bargery, a production foreman, confirmed that he also felt Miller was not qualified to serve as foreman, based on his unfamiliarity with the Gallman plant, particularly with lines 3 and 4.  Bargery insisted that significant differences existed between lines 1 and 2, where Miller worked, and lines 3 and 4, in that lines 3 and 4 were more technologically advanced and utilized computers.  He estimated that an average person with experience on lines 1 and 2 would need approximately one month of additional training to operate lines 3 and 4.

---

[3] Hillman also noted that Stephen Rials, another candidate for the position, was determined to be the second most qualified candidate.

Hillman further explained that Miller has "consistently demonstrated an inability to handle tasks and resolve problems that were different from his ordinary duties and responsibilities as a Kneader Operator on Production Lines 1-2."  Mike Clark, Miller's production foreman in 2002, testified in his deposition that in his opinion Miller was a "repetitious person," who could perform the same task every day well, but if moved out of his usual position, he was "totally lost."  Clark attested that he had seen Miller on several occasions have difficulty in solving problems and he felt that Miller should have been more knowledgeable about the plant considering his years of experience. He also maintained that Miller lacked the leadership skills necessary to be a good production foreman.

For his part, Miller submits that at the time he applied for the position in 2002, he had twenty-two years of experience at the Gallman facility, including eighteen years of experience as a class A operator.  He argues that he did possess management experience stemming from his service as a detail foreman for two years in the early 1990's and as a shipping foreman with Marxman Industries prior to his employment at Gallman.[4]  Notably, however,

---

[4]  Miller also claims in his brief that in 1997, Don Callahan, the plant superintendent at the time, told him that he was practically a shoe-in for the foreman's position because of his experience and time on the job.  Defendants contend that this alleged statement is inadmissible hearsay, and in any event, its truthfulness and relevance is questionable in light of the fact that Miller did not receive one of the available positions in 1997.

Miller's experience as detail foreman pre-dated establishment of lines 3 and 4.  Plaintiff also directs the court's attention to his own deposition testimony in which he stated that he believed he was more qualified than Elkins and the deposition testimony of two of his former co-plaintiffs, Cedric Carter and Willie Bradley. Specifically, Bradley testified in his deposition that Miller was "as qualified" as Elkins, and Carter testified that Miller was "more qualified" than Elkins.

Miller maintains that lines 1 and 2 and lines 3 and 4 are "basically the same" and that he had some limited experience performing tasks on lines 3 and 4.  He further contends that in the past, Jimmy Gallman, Mike Clark, William Lott and Matt Henley, all of whom are white, were promoted to production foremen positions without extensive experience on lines 3 and 4.

Finally, Miller contends that he has also produced sufficient statistical evidence for a jury to find that defendants' decision not to promote him was discriminatory.  Specifically, Miller submits that out of eight management position in the Gallman facility, none are filled by African American employees, while approximately one-third of the operators at the facility are African American.  Additionally, Miller points out that out of fifty-five management positions statewide, only four are filled by African Americans.

The court finds these arguments unpersuasive.  First, the bulk of plaintiff's arguments support the proposition that he was

8

qualified for the position, a fact the court has assumed for the
purposes of this motion, rather than the proposition that he was
better qualified than Elkins.  While it is undisputed that Miller
had more years of service with defendants than Elkins, under the
law, "greater experience alone will not suffice to raise a fact
question as to whether one person is clearly more qualified than
another."  Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 42
(5th Cir. 1996); see Bodenheimer v. PPG Indus., Inc., 5 F.3d 955,
959 (5th Cir. 1993)(finding an "attempt to equate years served with
superior qualifications . . . unpersuasive").

     A review of the deposition testimony of Bradley, offered by
plaintiff, reveals that he testified only that Miller was "as
qualified" as Elkins.  Similarly, while Carter testified that
Miller was "more qualified" than Elkins, when asked what testimony
he could offer in support of Miller's claim, Carter responded,
"Just that he's a competent employee.  I mean, he's competent.  He
makes educated decisions, I'll put it that way.  That's the best I
can do."  When asked if he felt like Miller knew the operating
systems better than Elkins, Carter replied "Not necessarily better
. . .".  In the court's opinion, Carter's testimony, when taken as
a whole, can hardly be considered a glowing recommendation, and as
defendants point out, neither Carter nor Bradley were members of
management and neither played any role in evaluating the
qualifications of the candidates for the subject production
foreman position.  This evidence, combined with plaintiff's own

testimony, is not sufficient to avoid summary judgment.  See Dailey v. Vought Aircraft Indus., Inc., 135 Fed. Appx. 642, 645 (5th Cir. 2005)(finding that the plaintiff had failed to meet his burden to show he was clearly better qualified where "[h]is summary judgment evidence amount[ed] to no more than his own assertions that he [was] better qualified and the deposition statements of associates that [he] [was] qualified for promotion").

As for plaintiff's argument with respect to the promotions of Gallman, Clark, Lott and Henley, defendant points out that these men were promoted in the mid-1990's, either before or immediately following the establishment of lines 3 and 4, and therefore, it would have been impossible for defendants to consider prior experience on lines 3 and 4 as an essential, or desirable, qualification for the position of production foreman.  Finally, defendants contend that plaintiff's statistical evidence is meaningless because he did not utilize the proper points of comparison, and the court agrees.  As explained by the Fifth Circuit, "[i]n establishing an inference of discrimination from statistical evidence the 'required comparison [is] to a qualified pool of employees presumptively eligible for promotion.'"  Lewis v. N.L.R.B., 750 F.2d 1266, 1275 (5th Cir. 1985) (quoting Pouncy v. Prudential Insurance Co. of America, 668 F.2d 795, 803 (5th Cir. 1982)).  Here, Miller has compared the racial composition of the management of the Gallman facility to the racial composition of

the production line operators, without any evidence as to how many of these operators are qualified for management positions. Similarly, Miller's recitation of the fact that only four out of fifty-five management positions statewide are filled by African Americans also lacks any evidence of the relevant qualified labor pool for these positions.  As such, Miller's statistical evidence fails to create a triable issue on pretext.

Based on the foregoing, the court concludes that, in light of defendants' proffered non-discriminatory reasons for their decision to promote Elkins and not promote Miller, plaintiff has failed to sustain his burden to show that he was clearly better qualified for the position of production foreman.  Accordingly, defendants' motion for summary judgment is granted.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED this 11th day of January, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE